

FILED

SEP - 4 2024

RORY L. PERRY II, CLERK
U.S. District Court
Southern District of West Virginia

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON GRAND JURY 2024
SEPTEMBER 4, 2024 SESSION

UNITED STATES OF AMERICA

v.                          CRIMINAL NO. 2:24-cr-00145

                            18 U.S.C. § 1343
                            18 U.S.C. § 1957
                            18 U.S.C. § 1512(b)(2)
                            18 U.S.C. § 2

THEODORE MILLER

I N D I C T M E N T

The Grand Jury Charges:

At all times material to this Indictment:

### Introduction

1.    Defendant  THEODORE  MILLER  was  a  Charleston-area
businessman who portrayed himself on social media as a wealthy and
successful  real  estate  mogul  with  enough  disposable  income  to
travel  the  world  at  his  leisure.  In  reality,  defendant  THEODORE
MILLER  had  poor  credit  and  thin  month-to-month  financial  margins,
was  delinquent  on  property  taxes  and  bills,  and  had  defaulted  on
loans.   Nevertheless,  defendant  THEODORE  MILLER  was  determined  to
maintain  a  carefully  curated  image  of  success.

2.    Beginning as early as October 2021, defendant THEODORE MILLER, aided and abetted by individuals both known and unknown to the Grand Jury, conceived and perpetrated two fraudulent schemes to bolster his businesses' monthly cash flow and to pay unrelated personal and professional debts, obligations, and expenses:

  a. **The Direct Investment Scheme:** A scheme to defraud investors by inducing them to invest in specific real estate projects, "direct investments," located on Bigley Avenue in Charleston, Kanawha County, West Virginia, through material misrepresentations, false promises, and omissions about, *inter alia*, the validity of the investors' security interest, the safety of the investment, defendant THEODORE MILLER's financial status, and the purpose for which the funds would be used; and then by misappropriating the funds for unrelated personal and business expenses.

  b. **The Bear Lute Scheme:** A scheme to defraud investors by inducing them to invest in a pooled real estate investment vehicle, "Bear Lute," through material misrepresentations, false promises, and omissions about, *inter alia*, the prior performance of Bear Lute, the validity of the investors' security interest, the safety of the investment, defendant THEODORE MILLER's financial status, the timeline for return of funds, and the purpose for which the funds would be used; and then by misappropriating the funds for unrelated personal and business expenses.

**Defendant and Relevant Entities and Properties**

3.    Defendant THEODORE MILLER was a United States citizen and a permanent resident of South Charleston, Kanawha County, West Virginia, within the Southern District of West Virginia. Defendant THEODORE MILLER remained outside the United States from on or about

2

February 12, 2022, to on or about August 8, 2024.

4.    Defendant THEODORE MILLER owned and operated several businesses registered in the State of West Virginia including, but not limited to, Bear Industries LLC, a real estate investment company, and T&C Construction LLC, a construction company.

5.    Bear Industries LLC was a single-member limited liability company registered in the State of West Virginia. Its sole member was defendant THEODORE MILLER.  Its business addresses were located in Charleston, Kanawha County, West Virginia, and Saint Albans, Kanawha County, West Virginia, within the Southern District of West Virginia.

6.    D.D. resided in Charleston, Kanawha County, West Virginia, and South Charleston, Kanawha County, West Virginia, within the Southern District of West Virginia. D.D. was an active participant in defendant THEODORE MILLER's businesses.  In particular, she held herself out as the Vice President of Bear Industries LLC. D.D. regularly managed finances, signed documents, facilitated business deals and transactions, and handled business communications. D.D. acted as defendant THEODORE MILLER's agent while he remained outside of the United States.

7.    Fifth Third Bankcorp ("Fifth Third") was an FDIC-insured bank with branches throughout the Southern District of West

3

Virginia, including Charleston, Kanawha County, West Virginia. Fifth Third was a financial institution as defined by 18 U.S.C. § 20 and was a financial institution which engaged in, and the activities of which, affected interstate commerce, as defined in 31 U.S.C. § 5312(a)(2).

8.    Paypal, Inc. ("Paypal") was an online payment system company headquartered in San Jose, California. Its servers were located in Utah, Arizona, and Nevada. Users could link their bank accounts and transfer money to another user using wire communications through the internet that passed through one of PayPal's servers.

9.    The properties located at 915, 917, 1007, 1015, 1019, and 1021 Bigley Avenue were within Charleston, Kanawha County, West Virginia.

**The Direct Investment Scheme**

10.    Paragraphs 1 through 9 are incorporated by reference herein.

11.    From at least June 3, 2022, through at least September 8, 2022, at or near Charleston, Kanawha County, West Virginia, within the Southern District of West Virginia, and elsewhere, defendant THEODORE MILLER, aided and abetted by individuals both known and unknown to the Grand Jury, knowingly participated in a

4

scheme to defraud real estate project investors, in violation of 18 U.S.C. § 1343.

12. The purpose of the scheme was for defendant THEODORE MILLER to enrich himself by obtaining cash investments for specific real estate projects located on Bigley Avenue in Charleston, Kanawha County, West Virginia, on false information and promises, material misrepresentations, and omissions.

**Manner and Means of the Direct Investment Scheme**

13. It was part of the scheme to defraud that defendant THEODORE MILLER would and did:

a. Misrepresent himself on social media as a wealthy and successful real estate investor to gain the trust of potential investors;

b. Target victims by advertising direct investments on his social media platforms;

c. Create and share promotional materials for direct investments that contained false information;

d. Mislead investors about his ownership interest in the property subject to and surrounding the direct investment;

e. Mislead investors about the security of their investments, by agreeing to secure the investors' interest with property he did not, in fact, own;

f. Falsely promise to use the entirety of investor funds toward the specific projects, in specific ways;

g. Fail to disclose material information, such as his true personal financial standing and credit;

h. Falsely state to investors that the projects were progressing or were completed;

i. Use investor funds for personal benefit and to pay for unrelated real estate projects;

j. Fail to complete the projects;

k. Fail to repay investors as required; and

l. Refuse to communicate with investors after demands for information and payment.

14. In furtherance of the fraud, defendant THEODORE MILLER carried out the scheme in the following manner:

**The Dry-Storage Lot Project: Victims C.T. & J.C.**

15. In the spring of 2022, defendant THEODORE MILLER began soliciting investments for a project to construct a dry-storage lot at "1017" and 1019 Bigley Avenue, and to make improvements to a home located at 1021 Bigley Avenue in Charleston, West Virginia (the "dry-storage lot project").

16. He solicited investments, in part, by posting videos on his social media accounts, where he also regularly misrepresented himself as a successful, wealthy businessman.

17. From approximately July 5, 2022, to July 20, 2022, defendant THEODORE MILLER, aided and abetted by individuals known and unknown to the Grand Jury, fraudulently induced investments totaling $60,000 in the dry-storage lot project from two investors: $20,000 from C.T. and $40,000 from J.C.

6

18.   Defendant THEODORE MILLER provided C.T. with a project prospectus in or around June 2022. The prospectus falsely promised, *inter alia*, that:

    a. Defendant THEODORE MILLER would rehabilitate a small dwelling located at 1021 Bigley Avenue.

    b. Defendant THEODORE MILLER would construct a dry-storage lot at 1017 and 1019 Bigley Avenue, between 1007 Bigley Avenue and 1021 Bigley Avenue. Construction of the dry-storage lot would include clearing, leveling, and graveling the lot and installing a fence and security system.

    c. Defendant THEODORE MILLER would treat an investment as a construction loan to complete the project. If defendant THEODORE MILLER could not raise the total capital needed, $185,826.84, defendant THEODORE MILLER would allow investors to redirect their investment.

    d. Once construction was complete, defendant THEODORE MILLER would refinance the property, and investors would receive their initial investment back, plus an additional return. After, investors and defendant THEODORE MILLER would share in the rental income from the dwelling and dry-storage lot.

19.   After C.T. reviewed the prospectus, defendant THEODORE MILLER misrepresented to C.T. that he controlled the limited liability company that owned the dry-storage lot project property. Defendant THEODORE MILLER made other misrepresentations to C.T. in one-on-one communications designed to induce C.T.'s investment.

20.   C.T. ultimately decided to invest $20,000 in the dry-storage lot project. C.T. and defendant THEODORE MILLER entered into an "Investor Agreement" and a "Partnership Agreement"

7

in June 2022. The Investor Agreement falsely promised that C.T.'s funds would be used for the dry-storage lot project property only, that C.T.'s investment was secured by the dry-storage lot project property, and that defendant THEODORE MILLER would repay C.T. $20,000 plus 15 percent of the refinance proceeds by August 2, 2023. The Partnership Agreement governed how rental income would later be divided.

21.   C.T. then wired $20,000 from California to defendant THEODORE MILLER on or about July 5, 2022. The wire was deposited into defendant THEODORE MILLER's Bear Industries LLC Fifth Third bank account ending in 5311 in Charleston, West Virginia.

22.   C.T.'s wire was sent in reliance on defendant THEODORE MILLER's false promises and misrepresentations in the prospectus, the Investor Agreement, during the phone call, in one-on-one communications, in the Partnership Agreement, and on social media.

23.   Defendant THEODORE MILLER provided J.C. with the same project prospectus between June and July of 2022.

24.   Defendant THEODORE MILLER provided J.C. with additional investment materials related to the dry-storage lot project in July 2022. The additional materials misrepresented, *inter alia*, that investor money would be used as a down payment on a construction loan.

25.   J.C. decided to invest $40,000 in the project. He wired $20,000 from Florida to defendant THEODORE MILLER on or about July 19, 2022. He wired another $20,000 from Florida to defendant THEODORE MILLER on or about July 20, 2022. The wires were deposited into defendant THEODORE MILLER's Bear Industries LLC Fifth Third bank account ending in 5311 in Charleston, West Virginia.

26.   J.C's wires were sent in reliance on defendant THEODORE MILLER's false promises and misrepresentations in the prospectus, the additional materials, and on social media.

27.   Upon receiving the investments, defendant THEODORE MILLER did not do as he had promised. Defendant THEODORE MILLER did not rehabilitate the home at 1021 Bigley Avenue; construct a dry-storage lot; give C.T. or J.C. an opportunity to redirect their investment when he did not raise the total capital requirement; refinance the property; or pay investors.

28.   Additionally, at the time of the investments, Defendant THEODORE MILLER was not in a strong financial position.

29.   Defendant THEODORE MILLER also never owned the dry-storage lot project property, as represented. Therefore, C.T. could never have had a valid security interest therein. Nor could defendant THEODORE MILLER have ever owned "1017" Bigley Avenue, as it was not a valid address.

30.  Critically, defendant THEODORE MILLER did not use the entirety of the investors' funds for the dry-storage lot project. Nor did he use the investments as a down payment on a construction loan. Instead, defendant THEODORE MILLER put most of the funds to his own and D.D.'s benefit, directing the money toward personal expenses, private investments, and other business expenses.

31.  In furtherance of the scheme, defendant THEODORE MILLER sent J.C. and C.T. lulling communications. For example, in March 2023, knowing full-well that he had not completed the dry-storage lot project, defendant THEODORE MILLER told J.C. that J.C. would receive his first project disbursement at the end of the next month and to expect that his disbursements would increase "as the site fills up." J.C. never received a disbursement.

32.  In furtherance of the scheme, defendant THEODORE MILLER ceased all contact with C.T. and J.C. after they began inquiring further about the dry-storage lot project.

### The Duplex Projects: Victims J.C. & B.W.

33.  In or around Spring of 2022, and while defendant THEODORE MILLER was promoting the dry-storage lot project, defendant THEODORE MILLER began soliciting investments for the development of duplexes located at 915 and 917 Bigley Avenue, Charleston,

10

Kanawha County, West Virginia, the ("915 Bigley duplex project" and the "917 Bigley duplex project").

34.  He solicited investments, in part, by posting videos on his social media accounts, where he also regularly mispresented himself as a successful, wealthy businessman.

35.  From approximately July 14, 2022, to September 8, 2022, defendant THEODORE MILLER fraudulently induced investments totaling $30,000 in the duplex projects from two investors: $20,000 from J.C. for the 915 Bigley duplex project and $10,000 from B.W for the 917 Bigley duplex project.

36.  In June 2022, defendant THEODORE MILLER provided investment materials regarding the 915 Bigley duplex project to J.C.  The materials included, *inter alia*, the following misrepresentations, and false promises and information:

    a. Defendant THEODORE MILLER would redevelop the single-family residence located at 915 Bigley Avenue into a fully remodeled duplex.

    b. Defendant THEODORE MILLER would use the investment funds for a down payment on a construction loan.

    c. Construction of the duplex would involve installing modern kitchens, hardwood flooring, modern bathrooms, and brushed nickel lighting.

    d. After construction was complete, defendant THEODORE MILLER would rent the duplex units and refinance the property. Upon refinance, the investors' funds would be returned plus a portion of the increased equity.

11

      e. The investment was "safe and secure" because the investment would be personally guaranteed by defendant THEODORE MILLER and secured by the duplex property.

37. Defendant THEODORE MILLER also provided J.C. with a property report for 915 Bigley Avenue that included projections for the project and technical specifications for the property.

38. Between June and July of 2022, defendant THEODORE MILLER made numerous misrepresentations to J.C. during one-on-one communications designed to induce J.C.'s investment.

39. J.C. decided to invest $20,000 in the 915 Bigley duplex project. On July 14, 2022, J.C. and defendant THEODORE MILLER entered into an "Investor Agreement" and a "Partnership Agreement." The Investor Agreement misrepresented that J.C.'s investment was secured by 915 Bigley Avenue, and falsely promised that defendant THEODORE MILLER would repay J.C. $20,000 plus additional money from the refinance by July 24, 2024. The Partnership Agreement governed how rental income would later be divided.

40. J.C. wired $20,000 from Florida to defendant THEODORE MILLER on or about July 14, 2022. The wire was deposited into defendant THEODORE MILLER's Bear Industries LLC Fifth Third bank account ending in 5311 in Charleston, West Virginia.

41.   J.C's wire was sent in reliance on defendant THEODORE MILLER's false promises and misrepresentations contained in the investment materials, their one-on-one communications, the Investor Agreement, the Partnership Agreement, and on social media.

42.   In or around September 2022, defendant THEODORE MILLER provided investment information regarding the 917 Bigley duplex project to B.W. The information included, *inter alia*, the following misrepresentations and false promises and information:

    a. Defendant THEODORE MILLER would use the investment to redevelop the single-family residence located at 917 Bigley Avenue into a fully remodeled duplex;

    b. Construction of the duplex would involve a total remodel;

    c. After construction was complete, defendant THEODORE MILLER would rent the duplex units and refinance the property. Investors would receive quarterly distributions and upon refinance, the investors' funds would be returned plus a portion of the increased equity;

    d. The investment was "safe" because the investment would be personally guaranteed by defendant THEODORE MILLER and secured by the duplex property, a tangible asset; and

    e. Defendant THEODORE MILLER owned a "large amount" of rental property near 917 Bigley Avenue.

43.   B.W. decided to invest $10,000 in the 917 Bigley duplex project. On September 7, 2022, B.W. and defendant THEODORE MILLER entered into an "Investor Agreement" and a "Partnership

Agreement." The Investor Agreement falsely promised that B.W.'s funds would be used for the 917 Bigley Avenue duplex only, that B.W.'s investment was secured by 917 Bigley Avenue, and that defendant THEODORE MILLER would repay B.W. $10,000 plus additional money from the refinance by September 7, 2024. The Partnership Agreement governed how rental income would later be divided.

44. B.W. wired $10,000 from Texas to defendant THEODORE MILLER on or about September 8, 2022. The wire was deposited into defendant THEODORE MILLER's Bear Industries LLC Fifth Third bank account ending in 5311 in Charleston, West Virginia.

45. B.W.'s wire was sent in reliance on defendant THEODORE MILLER's false promises and misrepresentations in the investment information, the Investor Agreement, the Partnership Agreement, and on social media.

46. At the time of the investments, Defendant THEODORE MILLER was not in a strong financial position.

47. Additionally, defendant THEODORE MILLER did not do as he had promised. He did not remodel the homes at 915 and 917 Bigley Avenue, and he never refinanced the properties or paid investors.

48. Further, defendant THEODORE MILLER never owned 915 or 917 Bigley Avenue, as represented. Therefore, B.W. could never have had a valid security interest therein. Defendant THEODORE

MILLER also never owned a "large amount" of rental property near 915 or 917 Bigley Avenue.

49. Defendant THEODORE MILLER did not use the entirety of the investors' funds for the duplex projects. Nor did he use the investments as a down payment on a construction loan. Instead, defendant THEODORE MILLER put most of the funds toward his own and D.D.'s benefit, directing the money to personal expenses, private investments, and other business expenses.

50. In furtherance of the scheme, defendant THEODORE MILLER sent J.C. lulling communications. For example, in December 2022, defendant THEODORE MILLER, knowing full-well that he had not remodeled 915 Bigley Avenue, informed J.C. that the "interior remodel [was] completed."

51. In furtherance of the scheme, defendant THEODORE MILLER ceased all contact with J.C. and B.W. after they began inquiring further about the duplex projects.

## Counts One Through Five

52. Paragraphs 1 through 51 are incorporated by reference herein.

53. On or about the following dates at or near Charleston, Kanawha County, West Virginia, in the Southern District of West Virginia, and elsewhere, defendant THEODORE MILLER, aided and

15

abetted by individuals both known and unknown to the Grand Jury, having devised and intending to devise, and participating in a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and for the purpose of executing such scheme and artifice, did knowingly transmit and cause to be transmitted by means of wire and radio communications in interstate commerce the writings, signs, signals, pictures, and sounds described below for each count, each transmission constituting a separate count:

| COUNT | DATE (on or about) | INTERSTATE TRANSMISSION | FROM | TO |
|-------|--------------------|-------------------------|------|-----|
| 1 | July 5, 2022 | $20,000 electronic funds transfer ("EFT") from C.T. to Fifth Third account ending in 5311 | California | Charleston, West Virginia |
| 2 | July 19, 2022 | $20,000 EFT from J.C. to Fifth Third account ending in 5311 | Florida | Charleston, West Virginia |
| 3 | July 20, 2022 | $20,000 EFT from J.C. to Fifth Third account ending in 5311 | Florida | Charleston, West Virginia |
| 4 | July 14, 2022 | $20,000 EFT from J.C. to Fifth Third account ending in 5311 | Florida | Charleston, West Virginia |
| 5 | September 8, 2022 | $10,000 EFT from B.W. to Fifth Third account ending in 5311 | Texas | Charleston, West Virginia |

All in violation of Title 18, United States Code, Section 1343.

## The Bear Lute Scheme

54.    Paragraphs 1 through 9 are incorporated by reference herein.

55.    Beginning in or around October 2021, at or near Charleston, Kanawha County, West Virginia, within the Southern District of West Virginia, and elsewhere, defendant THEODORE MILLER, aided and abetted by individuals both known and unknown to the Grand Jury, knowingly participated in a scheme to defraud real estate project investors using an investment program known as Bear Lute, in violation of 18 U.S.C. § 1343.

56.    The purpose of the scheme was for defendant THEODORE MILLER to obtain one-time and monthly recurring cash investments through Bear Lute, on false information and promises, material misrepresentations, and omissions, and to convert those investments to his and D.D.'s benefit.

## Manner and Means of the Bear Lute Scheme

57.    It was part of the scheme to defraud that defendant THEODORE MILLER would and did:

    a. Misrepresent himself on social media as a wealthy and successful real estate investor to gain the trust of potential investors;

b. Target victims by advertising Bear Lute on his social media platforms;

c. Create a website, bearlute.com, for the purpose of inducing investments;

d. Post false and misleading information on bearlute.com such as fraudulent "satisfied investor reviews";

e. Mislead investors about how their funds would be spent and the returns they would enjoy;

f. Mislead investors about the security of their investments, by agreeing to secure the investors' interest with property he did not, in fact, own;

g. Falsely promise to use the entirety of investor funds toward real estate transactions;

h. Communicate with investors under an alias, "Nancy Smith;"

i. Fail to disclose material information, such as his true personal financial standing, credit, and that he had received a cease-and-desist order from the West Virginia Securities Commission;

j. Falsely promise that investor funds would be returned within sixty days of a withdraw request;

k. Use investor funds for his and D.D.'s personal benefit;

l. Fail to repay investors as required; and

m. Refuse to communicate with investors after demands for information and payment.

58. Specifically, in furtherance of the fraud, defendant THEODORE MILLER, aided and abetted by individuals both known and unknown to the Grand Jury, carried out the scheme in the following manner:

18

**Bear Lute: Victims E.S. & B.W.**

59. Between October 2021 and May 2022, defendant THEODORE MILLER conceived the idea for Bear Lute and created a website for Bear Lute, bearlute.com.

60. In or around May 2022, defendant THEODORE MILLER formally launched Bear Lute and began directing his social media followers to invest through bearlute.com. Defendant THEODORE MILLER advertised Bear Lute as a way for ordinary people to invest in real estate and become wealthy and successful, like him.

61. Beginning on or about May 2022, defendant THEODORE MILLER misrepresented to investors, through his social media posts, his website, and one-on-one communications that Bear Lute functioned in the following general manner:

     a. Investors would sign up to make either a reoccurring or one-time deposit in Bear Lute;

     b. All investor funds would be pooled into one conglomerate account;

     c. Investor funds would be deployed for various real estate projects;

     d. Once the projects were complete, the property would be refinanced and those funds would be added back to the conglomerate account; and

     e. Investors would be given quarterly distributions.

62. Further, defendant THEODORE MILLER misrepresented to investors that:

    a. Bear Lute generated exceptionally high, guaranteed returns;

    b. Investors would receive a minimum of 6 percent return on investment, but historically, that the average investor received over 20 percent return on investment;

    c. At any time, an investor could request to withdraw their funds, and the funds would be returned within sixty days; and

    d. The investment was secured by income-producing real estate.

63.  To sign up for Bear Lute, investors signed "Investor Agreements" that provided how much the investor would invest. The Investor Agreements also misrepresented that defendant THEODORE MILLER would return funds within 60 days of a request for withdraw, that the investments were to be used for real estate transactions, and that the investment was secured by an interest in 1007 Bigley Avenue and personally guaranteed by defendant THEODORE MILLER. Investors also gave defendant THEODORE MILLER and D.D. their bank account information and authorized automated clearing house ("ACH") withdrawals. The Investor Agreements and ACH authorizations were sent electronically to investors by D.D.

64.  After an individual invested in Bear Lute, defendant THEODORE MILLER and D.D. gave the investor access to an online investor dashboard where he or she could track his or her initial investment, make additional deposits, make withdraw requests, and watch his or her investment "grow."

65.  Investors could also communicate directly via email about their investments with defendant THEODORE MILLER, D.D., and "Nancy Smith," a fraudulent alias of defendant THEODORE MILLER.

66.  Between on or about June 30, 2022, and on or about February 28, 2024, D.D. used Paypal to process investors' Bear Lute deposits.

67.  Based on defendant THEODORE MILLER's misrepresentations and promises about Bear Lute on social media, on bearlute.com, in one-on-one communications, and in the Investor Agreements, defendant THEODORE MILLER induced more than 100 individuals to invest in Bear Lute and obtained more than $200,000 in investor funds.

68.  Specifically, on or about August 14, 2022, B.W. signed up for Bear Lute and began making monthly investments of $2,500, in reliance on defendant THEODORE MILLER's misrepresentations and promises about Bear Lute. B.W.'s deposits were deducted from his bank account in Texas, processed by Paypal, and deposited in defendant THEODORE MILLER's bank account ending in 5154 in the name of T&C Construction LLC at Fifth Third bank in Charleston, West Virginia, on the following dates: August 15, 2022, September 15, 2022, October 13, 2022, November 20, 2022, and December 12, 2022.

69.  Additionally, on or about October 12, 2022, E.S. signed up for Bear Lute. He made a one-time investment of $5,000, in reliance on defendant THEODORE MILLER's representations and promises about Bear Lute. On or about October 13, 2022, and October 14, 2022, E.S.'s investment was deducted from his bank account in Texas via two $2,500 debits, processed by Paypal, and deposited in defendant THEODORE MILLER's bank account ending in 5154 in the name of T&C Construction LLC at Fifth Third bank in Charleston, West Virginia.

70.  Nearly all of defendant THEODORE MILLER's representations and promises about Bear Lute were untrue.

71.  Investor funds were not pooled and deployed on real estate projects or transactions as described. Rather, as the Bear Lute funds were available, defendant THEODORE MILLER used the funds to his and D.D.'s personal benefit and to the benefit of defendant THEODORE MILLER's businesses.

72.  Defendant THEODORE MILLER did not perform any cash out refinances on properties that would have generated returns in excess of 6 percent for Bear Lute investors.

73.  The returns and quarterly distributions investors could view in the investor dashboard were not based on any real account figures.

74.    Defendant   THEODORE   MILLER   did   not   honor   withdraw requests within 60 days. Specifically, defendant THEODORE MILLER failed to ever return B.W.'s and E.S.'s investments after they made withdrawal requests.

75.    Defendant THEODORE MILLER did not own 1007 Bigley Avenue, and therefore, he could not validly pledge it as security.

76.    In furtherance of the scheme, defendant THEODORE MILLER communicated with investors under a fake alias, "Nancy Smith."

77.    In furtherance of the scheme, defendant THEODORE MILLER failed to disclose to investors that the West Virginia Securities Commission ordered him to cease and desist operating Bear Lute.

78.    In furtherance of the scheme, defendant THEODORE MILLER ceased all communications with investors who made requests for withdrawals.

## Counts Six Through Twelve

79.    Paragraphs 1 through 9 and 54 through 78 are incorporated by reference herein.

80.    On or about the following dates at or near Charleston, Kanawha County, West Virginia, in the Southern District of West Virginia, and elsewhere, defendant THEODORE MILLER, aided and abetted by individuals both known and unknown to the Grand Jury, having devised and intending to devise, and participating in a

scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and for the purpose of executing such scheme and artifice, did knowingly transmit and cause to be transmitted by means of wire and radio communications in interstate commerce the writings, signs, signals, pictures, and sounds described below for each count, each transmission constituting a separate count:

| COUNT | DATE (on or about) | INTERSTATE TRANSMISSION | FROM | TO |
|---|---|---|---|---|
| 6 | October 13, 2022 | $2,500 transfer from E.S. using Paypal | Texas | Charleston, West Virginia |
| 7 | October 14, 2022 | $2,500 transfer from E.S. using Paypal | Texas | Charleston, West Virginia |
| 8 | August 15, 2022 | $2,500 transfer from B.W. using Paypal | Texas | Charleston, West Virginia |
| 9 | September 15, 2022 | $2,500 transfer from B.W. using Paypal | Texas | Charleston, West Virginia |
| 10 | October 13, 2022 | $2,500 transfer from B.W. using Paypal | Texas | Charleston, West Virginia |
| 11 | November 20, 2022 | $2,500 transfer from B.W. using Paypal | Texas | Charleston, West Virginia |

| 12 | December 12, 2022 | $2,500 transfer from B.W. using Paypal | Texas | Charleston, West Virginia |

All in violation of Title 18, United States Code, Section 1343.

## Count Thirteen

81.    Paragraphs 1 through 80 are incorporated by reference herein.

82.    At all relevant times, Fifth Third had a branch located in Charleston, Kanawha County, West Virginia.

83.    On or about July 20, 2022, at or near Charleston, Kanawha County, West Virginia, within the Southern District of West Virginia, and elsewhere, defendant THEODORE MILLER did knowingly engage in and cause another to engage in a monetary transaction in criminally derived property of a value greater than $10,000, that is, an EFT of $20,000 from Bear Industries LLC's account at Fifth Third ending in 5311 to T&C Construction LLC's account at Fifth Third ending in 5154, and which in fact was derived from specified unlawful activities, that is, wire fraud in violation of 18 U.S.C. § 1343.

84.    While engaging in and causing others to engage in the monetary transaction, defendant THEODORE MILLER knew that the

property involved in the monetary transaction was criminally derived.

In violation of Title 18, United States Code, Section 1957 and 2.

### Count Fourteen

85.  On August 11, 2024, at or near Charleston, Kanawha County, West Virginia, within the Southern District of West Virginia, and elsewhere, defendant THEODORE MILLER did knowingly corruptly persuade and attempt to corruptly persuade another person known to the Grand Jury with the intent to cause and induce that person to alter, destroy, mutilate, and conceal an object, that is, a backpack and its contents, with the intent to impair the object's integrity and availability for use in an official proceeding, that is, a proceeding before a judge or court of the United States.

In violation of Title 18, United States Code, Section 1512(b)(2)(B).

## Count Fifteen

86.  On or about August 11, 2024, at or near Charleston, Kanawha County, West Virginia, within the Southern District of West Virginia, and elsewhere, defendant THEODORE MILLER did knowingly corruptly persuade and attempt to corruptly persuade another person known to the Grand Jury with the intent to cause and induce that person to alter, destroy, mutilate, and conceal an object, that is, a cell phone, with the intent to impair the object's integrity and availability for use in an official proceeding, that is, a proceeding before a judge or court of the United States.

In violation of Title 18, United States Code, Section 1512(b)(2)(B).

## Notice of Forfeiture

The allegations contained in paragraphs 1 through 86 of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to 18 U.S.C. §§ 981(a)(1)(C) and 982(a)(1), and 28 U.S.C. § 2461(c).

Upon conviction of the offense(s) in violation of 18 U.S.C. § 1343 of this indictment, the defendant THEODORE MILLER shall forfeit to the United States of America, pursuant to 18 U.S.C. § 981(a)(1)(C), 28 U.S.C. § 2461(c) and Rule 32.2 of the Federal Rules of Criminal Procedure, any property, real or personal, which constitutes or is derived from proceeds traceable to the offense(s).

Pursuant to 18 U.S.C. § 982(a)(1), 28 U.S.C. § 2461(c) and Rule 32.2 of the Rules of Criminal Procedure, upon conviction of an offense in violation of 18 U.S.C. § 1957, the defendant, THEODORE MILLER shall forfeit to the United States of America any property, real or personal, involved in such offense, and any property traceable to such property.

Pursuant to 18 U.S.C. § 981(a)(1)(C), 28 U.S.C. § 2461(c) and Rule 32.2 of the Rules of Criminal Procedure, upon a conviction of an offense in violation of 18 U.S.C. § 1512(b)(2)(B), the defendant THEODORE MILLER shall forfeit to the United States of America any

28

property, real or personal, involved in such offense, and any property traceable to such property.

The property to be forfeited includes, but is not limited to, the following, for which the United States will seek a money judgment in the amount of at least $290,000 in United States currency.

If any of the property described above, as a result of any act or omission of the defendant:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property, which cannot be divided without difficulty.

The United States of America shall be entitled to forfeiture of substitute property pursuant to 21 U.S.C. § 853(p), as incorporated by 28 U.S.C. § 2461(c).

All pursuant to 18 U.S.C. §§ 981(a)(1)(C) and 982(a)(1), and 28 U.S.C. § 2461(c).

WILLIAM S. THOMPSON
United States Attorney

By: _____
Holly J. Wilson
Assistant United States Attorney

29