

**United States Department of Justice**

*United States Attorney*
*Southern District of West Virginia*

*Robert C. Byrd United States Courthouse*
*300 Virginia Street, East*
*Suite 4000*
*Charleston, WV 25301*

*1-800-659-8726*
*304-345-2200*
*FAX: 304-347-5104*

February 5, 2025



Gordon Mowen, Esq.
Orndorff Mowen PLLC
135 Corporate Center Drive, Suite 524
Scott Depot, West Virginia 25560

> Re:  United States v. Theodore Miller
>      Criminal No. 2:24-cr-00145 (USDC SDWV)

Dear Mr. Mowen:

This will confirm our conversations with regard to your client, Theodore Miller (hereinafter "Mr. Miller"). As a result of these conversations, it is agreed by and between the United States and Mr. Miller as follows:

1.  **PENDING CHARGES.**  Mr. Miller is charged in a fifteen-count indictment as follows:

(a)  Counts One through Twelve charge Mr. Miller with violations of 18 U.S.C. § 1343 (wire fraud);

(b)  Count Thirteen charges Mr. Miller with a violation of 18 U.S.C. § 1957 and § 2 (causing transactional money laundering); and

(c)  Counts Fourteen and Fifteen charge Mr. Miller with violations of 18 U.S.C. § 1512(b)(2)(B) (obstruction of justice – corruptly persuading another to destroy evidence).

2.  **RESOLUTION OF CHARGES.**  Mr. Miller will plead guilty to Counts One and Twelve of said indictment, which charge him with violations of 18 U.S.C. § 1343. Following final disposition, the

*TM*
—————————
Defendant's
Initials

Gordon Mowen, Esq.
February 5, 2025                    Re: Theodore Miller
Page 2


United States will move the Court to dismiss Counts Two through Eleven and Thirteen through Fifteen in Criminal No. 2:24-cr-00145 as to Mr. Miller.

    3.  **MAXIMUM POTENTIAL PENALTY.**  The maximum penalty to which Mr. Miller will be exposed by virtue of this guilty plea is as follows:

COUNTS ONE AND TWELVE

    (a)  Imprisonment for a period of 20 years;

    (b)  A fine of $250,000, or twice the gross pecuniary gain or twice the gross pecuniary loss resulting from defendant's conduct, whichever is greater;

    (c)  A term of supervised release of 3 years;

    (d)  A mandatory special assessment of $100 pursuant to 18 U.S.C. § 3013; and

    (e)  An order of restitution pursuant to 18 U.S.C. §§ 3663 and 3664, or as otherwise set forth in this plea agreement.

TOTAL COMBINED MAXIMUM PENALTY

    (a)  Imprisonment for a period of 40 years;

    (b)  A fine of $500,000, or twice the gross pecuniary gain or twice the gross pecuniary loss resulting from defendant's conduct, whichever is greater;

    (c)  A term of supervised release of 3 years;

    (d)  A mandatory special assessment of $200 pursuant to 18 U.S.C. § 3013; and

_TM_

_____
Defendant's
Initials

Gordon Mowen, Esq.
February 5, 2025                    Re: Theodore Miller
Page 3

    (e)  An order of restitution pursuant to 18 U.S.C. §§ 3663 and 3664, or as otherwise set forth in this plea agreement.

4.  **TERMINATION OF PROSECUTION.**  The conviction and final disposition of Mr. Miller pursuant to this plea agreement will conclude the investigation and prosecution of Maytee Fatima Condezo Marcos by the United States in the Southern District of West Virginia for (a) her actual and attempted obstruction of justice arising out of or relating to the obstruction charge as set forth in the Indictment, in the Southern District of West Virginia and elsewhere, and (b) any and all conduct related to Mr. Miller's fraudulent schemes, as described in "Plea Agreement Exhibit A," between January 2021 and the date of this Agreement.

5.  **SPECIAL ASSESSMENT.**  Prior to the entry of a plea pursuant to this plea agreement, Mr. Miller will tender a check or money order to the Clerk of the United States District Court for $200, which check or money order shall indicate on its face the name of defendant and the case number. The sum received by the Clerk will be applied toward the special assessment imposed by the Court at sentencing. Mr. Miller will obtain a receipt of payment from the Clerk and will tender a copy of such receipt to the United States, to be filed with the Court as an attachment to this plea agreement. If Mr. Miller fails to provide proof of payment of the special assessment prior to or at the plea proceeding, the United States will have the right to void this plea agreement. In the event this plea agreement becomes void after payment of the special assessment, such sum shall be promptly returned to Mr. Miller.

6.  **RESTITUTION.** Notwithstanding the offense of conviction, Mr. Miller agrees that he owes restitution in the amount of between $395,000 and $434,501.42 to any and all victims and agrees to pay such restitution, with interest as allowed by law, to the fullest extent financially feasible. In aid of restitution, Mr. Miller further agrees as follows:

    (a)  Mr. Miller agrees to fully assist the United States in

_TM_
_____
Defendant's
Initials

Gordon Mowen, Esq.
February 5, 2025                    Re: Theodore Miller
Page 4

      identifying and locating any assets to be applied toward
restitution and to give signed, sworn statements and
testimony concerning assets upon request of the United
States.

(b)    Mr. Miller will fully complete and execute, under oath,
a Financial Statement and a Release of Financial
Information on forms supplied by the United States and
will return these completed forms to counsel for the
United States within seven calendar days from the date
of the signing of this plea agreement.

(c)    Mr. Miller agrees not to dispose of, transfer or
otherwise encumber any real or personal property which
he currently owns or in which he holds an interest.

(d)    Mr. Miller agrees to fully cooperate with the United
States in the liquidation of assets to be applied towards
restitution, to execute any and all documents necessary
to transfer title of any assets available to satisfy
restitution, to release any and all right, title and
interest he may have in and to such property, and waives
his right to exemptions under the Federal Debt
Collection Procedures Act upon levy against and the sale
of any such property.

(e)    Mr. Miller agrees not to appeal any order of the District
Court imposing restitution unless the amount of
restitution imposed exceeds the amount set forth in this
plea agreement. However, nothing in this provision is
intended to preclude the Court from ordering Mr. Miller
to pay a greater or lesser sum of restitution in
accordance with law.

7.    **FORFEITURE**. Mr. Miller hereby agrees as follows:

(a)    To forfeit to the United States any and all property in
Mr. Miller's possession or under his control which



Defendant's
Initials

Gordon Mowen, Esq.
February 5, 2025                    Re: Theodore Miller
Page 5

constitutes proceeds of, or was derived from proceeds, or was involved in the offense to which Mr. Miller is agreeing to plead guilty, and is set forth in this indictment, namely the violation of 18 U.S.C. § 1343. Mr. Miller further agrees that he will not contest a forfeiture money judgment in the amount up to $434,501.42, which amount constitutes a portion of the proceeds of the violations set forth in the indictment.

(b)  To assist the United States and its agents in identifying all such property, regardless of its location and the manner in which it is titled. Any such identified property deemed forfeitable by the United States will then be forfeited, pursuant to 18 U.S.C. §§ 981, 982 or 28 U.S.C. § 2461, in either an administrative or judicial forfeiture action;

(c)  To fully complete and execute, under oath, a Financial Affidavit in a form supplied by the United States and to return to counsel for the United States the completed Affidavit within seven calendar days from the date of signing this plea agreement;

(d)  To provide sworn testimony and to execute any documents deemed necessary by the United States to effectuate the forfeiture and to transfer title to the said property to the United States; and

(e)  To waive any defenses to this criminal action, or to any related administrative or judicial forfeiture action, based in whole or in part on the Excessive Fines Clause of the Eighth Amendment to the Constitution, or the holding or principles set forth in United States v. Alexander, 509 U.S. 544 (1993); United States v. Bajakajian, 524 U.S. 321 (1998); United States v. Austin, 509 U.S. 602 (1993); and their progeny.

8.   **PAYMENT OF MONETARY PENALTIES.** Mr. Miller authorizes the

*T M*

_____
Defendant's
Initials

Gordon Mowen, Esq.
February 5, 2025                    Re: Theodore Miller
Page 6


Financial Litigation Program in the United States Attorney's Office to obtain a credit report from any major credit reporting agency prior to sentencing in order to assess his financial condition for sentencing purposes. Mr. Miller agrees not to object to the District Court ordering all monetary penalties (including the special assessment, fine, court costs, and any restitution that does not exceed the amount set forth in this plea agreement) to be due and payable in full immediately and subject to immediate enforcement by the United States. So long as the monetary penalties are ordered to be due and payable in full immediately, Mr. Miller further agrees not to object to the District Court imposing any schedule of payments as merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment.

Mr. Miller authorizes the United States, through the Financial Litigation Program, to submit any unpaid criminal monetary penalty to the United States Treasury for offset in accordance with the Treasury Offset Program, regardless of the defendant's payment status or history at that time.

In addition to any payment ordered by the Court, Mr. Miller shall pay all monies received from any source other than earned income, including but not limited to, lottery winnings, gambling proceeds, judgments, inheritances, and tax refunds, toward the court ordered restitution or fine.

Mr. Miller agrees that if he retains counsel or has appointed counsel in response to the United States' efforts to collect any monetary penalty, he shall immediately notify the United States Attorney's Office, Attention: Financial Litigation Program, 300 Virginia Street E., Suite 4000, Charleston, West Virginia 25301, in writing and shall instruct his attorney to notify FLP immediately of his representation.

9.    **COOPERATION.** Mr. Miller will be forthright and truthful with this office and other law enforcement agencies with regard to

_TM_
————————————
Defendant's
Initials

Gordon Mowen, Esq.
February 5, 2025                    Re: Theodore Miller
Page 7

all inquiries made pursuant to this agreement, and will give
signed, sworn statements and grand jury and trial testimony upon
request of the United States.  In complying with this provision,
Mr. Miller may have counsel present except when appearing before
a grand jury.   Further, Mr. Miller agrees to be named as an
unindicted co-conspirator and unindicted aider and abettor, as
appropriate, in subsequent indictments or informations.

　　　10.  **USE IMMUNITY.**  Unless this agreement becomes void due
to a violation of any of its terms by Mr. Miller, and except as
expressly provided for in paragraph 12 below, nothing contained in
any statement or testimony provided by him pursuant to this
agreement, or any evidence developed therefrom, will be used
against him, directly or indirectly, in any further criminal
prosecutions or in determining the applicable guideline range
under the Federal Sentencing Guidelines.

　　　11.  **LIMITATIONS ON IMMUNITY.**  Nothing contained in this
agreement restricts the use of information obtained by the United
States from an independent, legitimate source, separate and apart
from any information and testimony provided pursuant to this
agreement, in determining the applicable guideline range or in
prosecuting Mr. Miller for any violations of federal or state laws.
The United States reserves the right to prosecute Mr. Miller for
perjury or false statement if such a situation should occur
pursuant to this agreement.

　　　12.  **STIPULATION OF FACTS AND WAIVER OF FED. R. EVID. 410.**
The United States and Mr. Miller stipulate and agree that the facts
comprising the offense of conviction and some but not all relevant
conduct include the facts outlined in the "Stipulation of Facts,"
a copy of which is attached hereto as "Plea Agreement Exhibit A."

　　　Mr. Miller agrees that if he withdraws from this agreement,
or this agreement is voided as a result of a breach of its terms
by him, and he is subsequently tried for his conduct alleged in
the indictment and other relevant conduct, as more specifically
described in the Stipulation of Facts, the United States may use

_T.M_
_____
Defendant's
Initials

Gordon Mowen, Esq.
February 5, 2025                              Re: Theodore Miller
Page 8

and introduce the Stipulation of Facts in the United States case-in-chief, in cross-examination of Mr. Miller or of any of his witnesses, or in rebuttal of any testimony introduced by him or on his behalf. Mr. Miller knowingly and voluntarily waives, see <u>United States v. Mezzanatto</u>, 513 U.S. 196 (1995), any right he has pursuant to Fed. R. Evid. 410 that would prohibit such use of the Stipulation of Facts. If the Court does not accept the plea agreement through no fault of the defendant, or the Court declares the agreement void due to a breach of its terms by the United States, the Stipulation of Facts cannot be used by the United States.

    The United States and Mr. Miller understand and acknowledge that the Court is not bound by the Stipulation of Facts and that if some or all of the Stipulation of Facts is not accepted by the Court, the parties will not have the right to withdraw from the plea agreement.

    13.    **RULE 11(c)(1)(C) AGREEMENT.** Pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, the United States and Mr. Miller agree that a sentence of imprisonment of between 80 months and 84 months is the appropriate disposition of this case. Mr. Miller understands that this agreement pursuant to the Fed. R. Crim. P. 11(c)(1)(C) is not binding on the District Court unless and until the District Court accepts this plea agreement. If the Court refuses to accept this plea agreement, Mr. Miller has the right to void this agreement and may withdraw his guilty plea.

    14.    **AGREEMENT ON SENTENCING GUIDELINES.** Based on the foregoing Stipulation of Facts, the United States and Mr. Miller agree that the following provisions of the United States Sentencing Guidelines apply to this case.

| Base Offense Level | 2B1.1(a)(1) | 7 |
|---|---|---|
| Loss totaling more than $250,000 | 2B1.1(b)(1)(G) | +12 |
| More than 10 victims & mass-marketing | 2B1.1(b)(2)(A) | +2 |
| Violation of any prior, specific | 2B1.1(b)(9)(C) | +2 |

                                              _____
                                              Defendant's
                                              Initials

Gordon Mowen, Esq.
February 5, 2025                    Re: Theodore Miller
Page 9

| judicial or administrative order, injunction, decree, or process | | |
|---|---|---|
| Substantial portion of offense committed outside the United States & sophisticated means | 2B1.1(b)(10)(B)-(C) | +2 |
| Abuse of Position of Trust | 3B1.3 | +2 |
| Obstruction of Justice | 3C1.1 | +2 |
| Leadership Role | 3B1.1(c) | +2 |
| **TOTAL** | | **31** |

The United States and Mr. Miller acknowledge and understand that the Court and the Probation Office are not bound by the parties' calculation of the United States Sentencing Guidelines set forth above and that the parties shall not have the right to withdraw from the plea agreement due to a disagreement with the Court's calculation of the appropriate guideline range.

15. **WAIVER OF APPEAL AND COLLATERAL ATTACK.** Mr. Miller knowingly and voluntarily waives his right to seek appellate review of his conviction and of any sentence of imprisonment, fine, or term of supervised release imposed by the District Court, or the manner in which the sentence was determined, on any ground whatsoever including any ground set forth in 18 U.S.C. § 3742(a), except that the defendant may appeal any sentence that exceeds the maximum penalty prescribed by statute. Mr. Miller also knowingly and voluntarily waives any right to seek appellate review of any claim or argument that (1) the statute of conviction 18 U.S.C. § 1343 is unconstitutional, and (2) Mr. Miller conduct set forth in the Stipulation of Facts (Plea Agreement Exhibit A) does not fall within the scope of the 18 U.S.C. § 1343.

The United States also agrees to waive its right to appeal any sentence of imprisonment, fine, or term of supervised release imposed by the District Court, or the manner in which the sentence was determined, on any ground whatsoever, including any ground set forth in 18 U.S.C. § 3742(b), except that the United States may appeal any sentence that is below the minimum penalty, if any, prescribed by statute.

_T M_
_____
Defendant's
Initials

Gordon Mowen, Esq.
February 5, 2025                    Re: Theodore Miller
Page 10


Mr. Miller also knowingly and voluntarily waives the right to
challenge his guilty plea and conviction resulting from this plea
agreement, and any sentence imposed for the conviction, in any
collateral attack, including but not limited to a motion brought
under 28 U.S.C. § 2255.

The waivers noted above shall not apply to a post-conviction
collateral attack or direct appeal based on a claim of ineffective
assistance of counsel.

16. **WAIVER OF FOIA AND PRIVACY RIGHT.** Mr. Miller knowingly
and voluntarily waives all rights, whether asserted directly or by
a representative, to request or receive from any department or
agency of the United States any records pertaining to the
investigation or prosecution of this case, including without any
limitation any records that may be sought under the Freedom of
Information Act (FOIA), 5 U.S.C. § 552, or the Privacy Act of 1974,
5 U.S.C. § 552a, following final disposition.

17. **FINAL DISPOSITION.** The matter of sentencing is within
the sole discretion of the Court. The United States has made no
representations or promises as to a specific sentence. The United
States reserves the right to:

(a)  Inform the Probation Office and the Court of all relevant
     facts and conduct;

(b)  Present evidence and argument relevant to the factors
     enumerated in 18 U.S.C. § 3553(a);

(c)  Respond to questions raised by the Court;

(d)  Correct inaccuracies or inadequacies in the presentence
     report;

(e)  Respond to statements made to the Court by or on behalf
     of Mr. Miller;

_____
                    Defendant's
                    Initials

Gordon Mowen, Esq.
February 5, 2025                    Re: Theodore Miller
Page 11


    (f)   Advise the Court concerning the nature and extent of Mr.
        Miller's cooperation; and

    (g)   Address the Court regarding the issue of Mr. Miller's
        acceptance of responsibility.

    18.   **VOIDING OF AGREEMENT.**   If either the United States or
Mr. Miller violates the terms of this agreement, the other party
will have the right to void this agreement. If the Court refuses
to accept this agreement, it shall be void.

    19.   **ENTIRETY OF AGREEMENT.**   This written agreement
constitutes the entire agreement between the United States and Mr.
Miller in this matter.   There are no agreements, understandings
or recommendations as to any other pending or future charges
against Mr. Miller in any Court other than the United States
District Court for the Southern District of West Virginia.

    Acknowledged and agreed to on behalf of the United States:

                WILLIAM S. THOMPSON
                United States Attorney

        By:   *Holly J. Wilson*

                HOLLY J. WILSON
                Assistant United States Attorney


                                                    _TM_
                                    _____
                                    Defendant's
                                    Initials

Gordon Mowen, Esq.
February 5, 2025                    Re: Theodore Miller
Page 12


I hereby acknowledge by my initials at the bottom of each of the
foregoing pages and by my signature on the last page of this
twelve-page agreement that I have read and carefully discussed
every part of it with my attorney, that I understand the terms of
this agreement, and that I voluntarily agree to those terms and
conditions set forth in the agreement.  I further acknowledge that
my attorney has advised me of my rights, possible defenses, the
Sentencing Guideline provisions, and the consequences of entering
into this agreement, that no promises or inducements have been
made to me other than those in this agreement, and that no one has
threatened me or forced me in any way to enter into this agreement.
Finally, I am satisfied with the representation of my attorney in
this matter.

_____        _____
Theodore Miller                        Date Signed
Defendant

_____        _____
Gordon Mowen, Esq.                     Date Signed
Counsel for Defendant


_____
                                       Defendant's
                                       Initials

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON

UNITED STATES OF AMERICA

v.                                    CRIMINAL NO. 2:24-cr-00145

THEODORE MILLER

## STIPULATION OF FACTS

The United States and THEODORE MILLER (hereinafter "defendant," "I," and "My") stipulate and agree that the facts comprising the offenses of conviction, Counts Two and Twelve in the Indictment in the Southern District of West Virginia, Criminal No. 2:24-cr-00145, and some but not all of the relevant conduct for those offenses, include the following:

### Background

As far back as 2014, I began forming and operating several businesses in West Virginia, including but not limited to Bear Industries LLC ("Bear Industries"), a real estate investment company; Prestige Worldwide Real Estate, a real estate company; T&C Construction Services LLC ("T&C Construction"), a construction company; Stark Industries, a real estate holding company; McLovin Enterprises LLC, a restaurant and bar d/b/a The Sorority; and Homeless Savior Foundation, a 501(c)(3) non-profit to help homeless individuals (together, the "Bear Entities"). With the exception of Stark Industries, the Bear Entities are solely owned and operated by me.

My mother, Deanna Drumm, served as the Vice President of Bear Industries from in or around 2019 to September 2024. I oversaw and directed her work, which included the management of finances.

I have been a permanent resident of West Virginia since at least 2019, though I lived and traveled abroad between June 2021 and August 2024.

**PLEA AGREEMENT EXHIBIT A**
1

Gordon Mowen, Esq.
February 5, 2025                          Re: Theodore Miller
Page 2

My personal bank account and the Bear Entities' bank accounts
are and have been held at Fifth Third Bancorp at all relevant
times. Fifth Third Bancorp is a financial institution as defined
by 18 U.S.C. § 20 and a financial institution which engaged in and
the activities of which affected interstate commerce as defined in
31 U.S.C. § 5312.

<u>2020-2021: The Bakery Building and Financial Strain</u>

In October 2020, I entered into a "Land Contract" for a large
industrial building at 1007 Bigley Avenue, Charleston, Kanawha
County, West Virginia (the "Bakery Building") and an empty lot
at 1015 Bigley Avenue, Charleston, Kanawha County, West Virginia.
The agreement provided that title would not transfer to me until
the entire purchase price of $600,000 was paid. I was required to
pay $5,226.64 per month, which would be credited towards the total
purchase price. Almost immediately after the agreement was
executed, the Bakery Building became a financial problem for me.
The roof needed significant repairs, which I could not afford. My
efforts to secure alternative sources of funding for the Bakery
Building in 2021 were unsuccessful.

In or around June 2021, I began living abroad. As a result,
I ran my West Virginia businesses remotely from outside the United
States. I managed the Bear Entities' finances through my mother,
who was present in West Virginia. I would regularly tell her what
bills to pay, how and where to move money, and what tasks to
complete. I and my mother both had access to all bank accounts for
the Bear Entities including an account ending in 5311 in the name
of Bear Industries, an account ending in 5162 in the name of
Prestige Worldwide Real Estate, and an account ending in 5154 in
the name of T&C Construction. I also had access to a Paypal account
that was linked to the T&C Construction bank account ending in
5154.

In October 2021, I conceived of an investment program that I
would offer to the public directly through social media. That
conceptualized investment program, which was at the time unnamed
but that I later dubbed "Bear Lute," contemplated obtaining
investments from average people, depositing the funds into a 6%
interest bearing account, moving the investments from the account
to real estate projects, sharing in the profits with investors,
and securing the investments with real estate. The concept

Gordon Mowen, Esq.
February 5, 2025                    Re: Theodore Miller
Page 3

explicitly contemplated that investors would be able to withdraw
their funds within sixty days of making a request.

    Around this same time, my financial status continued to
worsen. This was caused, in part, by the condition of the Bakery
Building. For example, on October 18, 2021, the Charleston Fire
Department temporarily shut down the Bakery Building for life
safety issues.

<u>2022-2024: Bear Lute and Direct Investment Projects</u>

    In February 2022, I conceived of another new venture:
acquiring and developing property adjacent to the Bakery Building
along Bigley Avenue in Charleston, West Virginia. Because I was
living abroad at the time, I negotiated with the owner of those
properties around this timeframe through my mother.

    Specifically, I imagined that the venture would include two
projects. First, the residences located at 915 and 917 Bigley
Avenue Charleston, Kanawha County, West Virginia would be
developed into modern duplexes. Second, a dry-storage lot would be
constructed and rented out at 1019 Bigley Avenue and superficial
upgrades would be made to the residence at 1021 Bigley Avenue.

    I made efforts to obtain traditional financing for these
projects in early 2022, but I was unsuccessful. As a result, I
advertised the projects to individual investors via email using
the internet beginning in or around May of 2022 as "direct
investments."

    Separately, on May 26, 2022, I formally launched "Bear Lute,"
the investment program conceptualized in October 2021.

    On May 31, 2022, I entered into a "Land Contract" for 915 and
917 Bigley Avenue, Charleston, Kanawha County, West Virginia. T&C
Construction was listed as the "purchaser." The agreement provided
that title would not transfer until the entire purchase price of
$80,000 was paid. I was required to pay $1,000 per month toward
the purchase price. My mother signed the agreement on my behalf.

    Between May and June of 2022, my financial situation worsened
significantly. My mortgages and car payments fell into
delinquency, the water was shut off at the Bakery Building for

**PLEA AGREEMENT EXHIBIT A**
3

Gordon Mowen, Esq.
February 5, 2025                        Re: Theodore Miller
Page 4

non-payment, and financial institutions denied loans to me, due in part to my poor credit.

Investors began investing in both "Bear Lute" and the "direct investment" projects in or around June 2022.

On July 27, 2022, I entered into another "Land Contract" for 1019 and 1021 Bigley Avenue, Charleston, Kanawha County, West Virginia. The agreement provided that title would not transfer to T&C Construction until the entire purchase price of $60,000 was paid. I was required to pay $539 per month, which would be credited towards the total purchase price. My mother signed the agreement on my behalf.

*Direct Investments*

I told investors for the dry-storage lot project, J.C. and C.T., that a secure lot would be constructed at "1017" and 1019 Bigley Avenue and that minor upgrades would be performed on the home at 1021 Bigley Avenue. Once the construction was complete, I would return investors' initial investment, plus a percentage of a cash out refinance. Thereafter, I would rent out the lot spaces and the house, and I and the investors would share in the rental income. I led the investors to believe that this investment was safe.

I told investors for the duplex project, J.C., B.W., and A.G., that the homes at 915 and 917 Bigley Avenue would be developed into modern duplexes, refinanced, and rented out. Like the dry-storage lot project, once the remodels were complete, I would return investors' initial investment, plus a percentage of a cash out refinance. Thereafter, I would rent out the duplexes, and I and the investors would share in the rental income. I led investors to believe that this investment was safe.

I had investors for both projects sign two documents via Docusign to invest in the direct investment projects: an "Investor Agreement" and a "Partnership Agreement." The Investor Agreements were promissory notes, under which I promised to repay the investor within a specific time period and promised to use the investment funds for the projects only. I gave the investor a security interest in the project property—although I never possessed legal title to any of these project properties, and therefore could not

**PLEA AGREEMENT EXHIBIT A**
4

Gordon Mowen, Esq.
February 5, 2025                    Re: Theodore Miller
Page 5

have granted any investor a valid security interest in any of the
properties. The Partnership Agreements entitled the investors to
a portion of future rental income. I directed my mother to keep
track of all of the Investor Agreements and Partnership Agreements.

The table below summarizes the direct investments I obtained:

| Victim | Date(s) (approx.) | Project | Total Amount of Investment |
|--------|-------------------|---------|----------------------------|
| J.C. | 7/19/2022–7/20/2022 | Dry-Storage Lot | $40,000 |
| J.C. | 7/14/2022 | 915 Bigley Avenue Duplex | $20,000 |
| C.T. | 7/5/2022 | Dry-Storage Lot | $20,000 |
| B.W. | 9/8/2022 | 917 Bigley Avenue Duplex | $10,000 |
| A.G. | 10/6/2022 | 917 Bigley Avenue Duplex | $5,000 |
| **TOTAL** | | | **$95,000** |

The investors wired me their money. The wires were deposited
into one or more of the Bear Entities' accounts, and thereafter,
my mother, at my direction, comingled the investments with the
funds of other Bear Entities.  From these comingled accounts, and
at my direction, my mother paid the Bear Entities' financial
obligations, and transferred funds to herself and to me. This
included a $20,000 transfer on July 20, 2022, from Bear Industries'
account ending in 5311 to T&C Construction's account ending in
5154. I did not have the investments specifically applied toward
completing the dry-storage lot project or the duplex project.
Indeed, the projects were never even started in earnest. The lot
at 1019 Bigley Avenue remains vegetated. Further, 1017 Bigley
Avenue is not a valid address. I knew that these projects were not
being completed.

When the investors began inquiring about the status of the
projects and when they would receive their return, I lied and said
the projects were under way or completed. Ultimately, I stopped
responding to the investors. I never paid any of them back.

In the Spring of 2023, I defaulted on the monthly lease
payments for the Bigley Avenue properties (915, 917, 1007, 1015,
1019, and 1021) and lost possession of them entirely.

**PLEA AGREEMENT EXHIBIT A**
5

Gordon Mowen, Esq.
February 5, 2025                    Re: Theodore Miller
Page 6

*Bear Lute*

As stated, I launched Bear Lute in May of 2022. Bear Lute was a pooled real estate investment vehicle, promoted and run by me primarily through bearlute.com. I used my social media platform to direct investors to the website to learn about the program and to sign up. On my social media, I presented myself as a wealthy, successful, and knowledgeable real estate mogul to gain the trust of my followers.

Between May 2022 and September 2024, I controlled the content on bearlute.com. I made numerous misrepresentations on bearlute.com that were designed to make me seem wealthy and to make Bear Industries seem like a large and successful real estate development company.

I also represented on bearlute.com that the investment program functioned in five steps. First, investors would sign up to make either a reoccurring or one-time deposit in Bear Lute. Second, all investor funds would be pooled into one conglomerate account. Third, investor funds would be deployed for various real estate projects. Fourth, once the projects were complete, the property would be refinanced, and those funds would be added back to the conglomerate account. Fifth, investors would be given quarterly distributions.

I told investors on bearlute.com that they could expect consistent, standard returns with a minimum return on investment of 6%, that they could withdraw their investment within sixty days of a withdraw request, and that their investment was "safe and secure" because it was backed with real property.

On my social media, I indicated to investors that they could make in excess of 20% return with Bear Lute, risk free. For example, I stated the following in a TikTok video:

> My company pays some pretty good fucking
> profits to its investors. Actually, at
> bearlute.com, we have historical rates of over
> 20%, and even though we have different levels
> of investment (bronze, silver, gold, and fuck
> it, let's go), no matter how much money you
> put in, as long as we keep down the path that

**PLEA AGREEMENT EXHIBIT A**
6

Gordon Mowen, Esq.
February 5, 2025                    Re: Theodore Miller
Page 7

> we have for several fucking years, your ROI
> will be in excess of 20 fucking percent.
> Because we pay in two different forms. The
> first one is 6% interest no matter what. You
> are loaning money to my company, so my company
> is gonna fucking pay you 6%. The second is
> quarterly gifts. If my company's doing good,
> you're doing good. Every quarter that you have
> money in the fucking account, you get a
> fucking distribution. And since it's based on
> the percentage of money in your account, the
> more money in your account, the more fucking
> money you make. If you wanna check it out,
> visit bearlute.com or click the link in my
> bio.  . . . You can get started for as little
> as a hundred fucking bucks. See what fucking
> happens all the way up to a million fucking
> dollars. As long as you remember that golden
> rule that you can't make money if you're a
> fucking pussy.

To sign up for Bear Lute, I had investors sign an "Investor Agreement." The Investor Agreement provided that funds would be returned within 60 days of a request for withdraw, that the investments were to be used exclusively for real estate transactions, and that the investment was secured by an interest in the Bakery Building (1007 Bigey Ave.) and personally guaranteed by me.

After an individual invested in Bear Lute, I gave the investor access to an online dashboard where the investor could track his or her initial investment, make additional deposits, make withdraw requests, and watch his or her investment "grow" on a graph. I created the graphs with Microsoft Excel using figures I made up. I did not base the graphs on real financial data.

Between 2022 and 2024, I had my mother use Paypal to process investors' Bear Lute deposits. I also directed my mother to keep track of investors in excel spreadsheets. I also used the Stripe payment processor for some of this time period.

All of the representations about Bear Lute mentioned above were false.

**PLEA AGREEMENT EXHIBIT A**
7

Gordon Mowen, Esq.
February 5, 2025                      Re: Theodore Miller
Page 8

1. Bear Industries was not a large and successful real estate development company. The Bear Entities were all financially struggling, and the real estate portfolio was much smaller than had been represented to investors. Bear Industries did not have any employees outside of me and my mother. I impersonated a "Nancy Smith" to communicate with investors in order to lend credibility to me and my businesses.

2. I did not pool the Bear Lute investments into a conglomerate, interest bearing account and deploy the funds on new real estate projects in the manner advertised to investors. Rather, I used the money as it came in to pay unrelated expenses, debts, and obligations. I directed my mom regarding which obligations to pay, and in what order.

3. I did not return investor funds within sixty days of a withdraw request. I ignored investors when they made requests. Only one investor, J.I., received a fraction of his investment back from Bear Lute.

4. The Bear Lute investments were not safe and secure. Most notably, the funds were not being invested at all—just spent. But also, I never possessed legal title to the Bakery Building, which I used to "secure" the investments. And, I continued to pledge the Bakery Building as security in Investor Agreements even after I had lost possession of that property.

5. Investors were never earning any interest on their investment. There was no conglomerate account. There was no 6% return, or any return whatsoever. There were no property refinances that would have generated any return.

In September 2022, the West Virginia Securities Commission issued Bear Industries a cease-and-desist letter ordering it to stop the unregistered sale and offering of securities through Bear Lute. I was on notice at this time that the continued solicitation and acceptance of investments via Bear Lute after this time would violate the West Virginia Securities Commission's letter. Nevertheless, I continued to operate Bear Lute. I did not formally respond to the letter, but I did post on my social media stating, in part:

**PLEA AGREEMENT EXHIBIT A**
8

Gordon Mowen, Esq.
February 5, 2025                    Re: Theodore Miller
Page 9

       [You're] wondering why I call the quarterly
distributions gifts? This is for a few
reasons. One in particular is so that I am not
regulated by the SEC. You may think that is a
bad fucking idea. Not at all. Actually, if you
know anything about big government, they get
super upset if they can't have a fucking piece
of the pie. . . . Yes, Bear Lute is 100% legal.

      In November 2022, the West Virginia Securities Commission
issued a final cease-and-desist order, again ordering me to stop
the unregistered sale and offering of securities through Bear Lute.
I received this order, and I responded to the order after it became
final. I continued to operate Bear Lute in violation of the order.
I never disclosed the order to my investors.

      I defrauded more than 170 investors through Bear Lute, most
of whom were located outside of the state of West Virginia. Bear
Industries obtained more than $300,000 from Bear Lute investors
between May of 2022 and September 2024.

      Specifically, B.W. and E.S. are two of the Bear Lute investors
who I defrauded. They sent the following interstate wire
transmissions to me as follows:

| DATE (on or about) | INTERSTATE TRANSMISSION | FROM | TO |
|---|---|---|---|
| October 13, 2022 | $2,500 transfer from E.S. using Paypal | Texas | Charleston, West Virginia |
| October 14, 2022 | $2,500 transfer from E.S. using Paypal | Texas | Charleston, West Virginia |
| August 15, 2022 | $2,500 transfer from B.W. using Paypal | Texas | Charleston, West Virginia |
| September 15, 2022 | $2,500 transfer from B.W. using Paypal | Texas | Charleston, West Virginia |
| October 13, 2022 | $2,500 transfer from B.W. using Paypal | Texas | Charleston, West Virginia |
| November 20, | $2,500 transfer | Texas | Charleston, West Virginia |

**PLEA AGREEMENT EXHIBIT A**

9

Gordon Mowen, Esq.
February 5, 2025                    Re: Theodore Miller
Page 10

| 2022 | from B.W. using Paypal | | |
|------|------------------------|--------|---------------------------|
| December 12, 2022 | $2,500 transfer from B.W. using Paypal | Texas | Charleston, West Virginia |

Both B.W. and E.S. relied on the false representations I made on bearlute.com and on the false promises I made in their Investor Agreements. I also communicated with B.W. and E.S. as "Nancy Smith." When B.W. and E.S. made withdraw requests, I ignored them.

### August 2024: Post-Arrest Obstructive Conduct

Law enforcement arrested me on August 9, 2024. On Sunday, August 11, 2024, at or around 10:26am, I had the following exchange with my wife, F.C., during a recorded phone call:

> F.C.: He [law enforcement agent] get, he got his ass inside of the house, and got your phone and your shoes.
>
> DEFENDANT: You know, I'm tempted to say that you guys should just report it stolen, on Apple, and at least lock it.
>
> F.C.: Huh uh honey, trust me, I was trying to do that, but I don't know your damn password. It's okay.
>
> DEFENDANT: Okay, we are being recorded right now, so . . .
>
> F.C.: I know. I know.
>
> DEFENDANT: Look in my backpack.
>
> F.C.: Yeah, yeah, yeah, I got it. Yeah, I got it. I know what to do.
>
> DEFENDANT: Okay, and then after that, make sure that that is, umm, not accessible. Okay?
>
> F.C.: Mmm uh [affirmative].

**PLEA AGREEMENT EXHIBIT A**
10

Gordon Mowen, Esq.
February 5, 2025                        Re: Theodore Miller
Page 11


           DEFENDANT: By anybody else.

           F.C.: Uhh huh [affirmative].

           DEFENDANT: Okay, now you've got the answer you
           needed, ha ha.

     Decoded, I was telling my wife to get my iPhone password from
my Acer laptop computer, which was inside my backpack; to use the
password to report the iPhone stolen to make it inaccessible to
law enforcement; and then, to hide the computer and backpack. It
was particularly important to hide the computer, because it
contained most of the documents related to Bear Lute and the direct
investments.

     On August 11, 2024, at or around 9:00pm, F.C. told me that
she had made the backpack and the computer "safe."


                         Total Loss

     I caused a loss to investors in a total amount of between
$395,000 and $434,501.42. Of this total amount, $95,000 of the
loss is associated with direct investments, consistent with the
table included above. The remainder is associated with Bear Lute.


                  PLEA AGREEMENT EXHIBIT A
                            11

Gordon Mowen, Esq.
February 5, 2025                    Re: Theodore Miller
Page 12

                              * * *

     This Stipulation of Facts does not contain each and every
fact known to defendant and to the United States concerning his
involvement and the involvement of others in the charges set forth
in the Indictment.

     Stipulated and agreed to:

_____          2/11/2025
THEODORE MILLER                            _____
Defendant                                  Date

_____          02/11/25
GORDON MOWEN                               _____
Counsel for Defendant                      Date

_____          2/18/25
HOLLY J. WILSON                            _____
Assistant United States Attorney          Date



                    **PLEA AGREEMENT EXHIBIT A**
                              12